**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON**

**CIVIL ACTION NO. 05-190-DLB**

**TERRI AUDI KRUSE,**                                                              **PLAINTIFF**


**VS.**                     **MEMORANDUM OPINION AND ORDER**


**AFLAC INTERNATIONAL, INC., ET AL.**                            **DEFENDANTS**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

### I.      INTRODUCTION

In this employment discrimination case, plaintiff asserts both federal and state statutory claims and numerous state law claims against defendants.  More particularly, plaintiff's amended complaint alleges fourteen (14) counts including retaliation under Title VII (Count I), retaliation under K.R.S. § 344 (Count II), gender/pregnancy discrimination under Title VII (Count III), gender/pregnancy discrimination under K.R.S. § 344 (Count IV), Equal Pay Act (Count V), promissory estoppel (Count VI), breach of contract (Count VII), conversion (Count VIII), fraud and misrepresentation (Count IX), breach of covenant of good faith and fair dealing (Count X), defamation (Count XI), tortuous interference with a business relationship (Count XII), conspiracy to retaliate under K.R.S. § 344 (Count XIII), and tortuous interference with a contract relationship (Count XIV).

This matter is pending for consideration of defendants', AFLAC International, Inc. ("AFLAC International") and America Family Life Assurance Company of Columbus ("AFLAC"), motion to compel arbitration and stay judicial proceedings (Doc. # 14).  Plaintiff

1

having responded to the motion (Doc. # 17), and defendants having filed their reply (Doc. # 18), the motion is ripe for the Court's review.  For the reasons set forth below, and because plaintiff's claims are subject to an arbitration agreement, the Court will grant the relief requested by defendants.

## II.    FACTUAL BACKGROUND

Taking the factual allegations in Plaintiff's Amended Complaint[1] as true, the following facts are relevant to the pending motion to compel arbitration.  Plaintiff was employed by defendant America Family Life Assurance Company of Columbus ("AFLAC") for twelve years, most recently as Regional Sales Coordinator, a position she held for approximately six years.

Plaintiff's employment with AFLAC was governed by various employment contracts, the most recent being an "Associate's Agreement" ("Agreement") which was effective as of August 1, 2001.  According to the language of that contract, that Agreement superseded and replaced all previous contracts between the parties.  This Agreement, similar to prior employment contracts between plaintiff and defendant AFLAC, contained an arbitration clause which provided:

> **PARAGRAPH FIFTEEN: Arbitration**
> (a)  Any dispute arising under this Agreement to the maximum extent allowed by applicable law, shall be subject to arbitration, and prior to commencing any court action the parties agree that they shall arbitrate all controversies.
>
> (b) **Procedure.** The arbitration shall be pursuant to the terms of the Federal Arbitration Act.  The parties shall notify each other of the existence of an arbitrable controversy by certified mail and shall attempt in good faith to

---

[1]  Plaintiff initially sued only AFLAC, Inc.  (Doc. # 1).  In her amended complaint, she added as defendants AFLAC International, AFLAC, American Family Life Assurance Company of Columbus, and Michael Fatherree.  (Doc. # 6).

resolve their differences within fifteen (15) days after the receipt of such notice. Notice to Associate shall be sent to Associate's address as it appears in AFLAC records and notice to AFLAC shall be sent to: Arbitration Officer, American Family Life Assurance Company, Columbus, Georgia 31999. If the dispute cannot be resolved within said fifteen-day period, either party may file a written demand for arbitration with the other party. The party filing such demand shall simultaneously specify his, her, or its arbitrator, giving the name, address and telephone number of said arbitrator. The party receiving such notice shall notify the party demanding the arbitration of his, her, or its arbitrator, giving the name, address, and telephone number of said arbitrator within five (5) days of the receipt of such demand. The arbitrator named by the respective parties need not be neutral. The Senior Judge of the Superior Court of Muscogee County, Georgia, on request by either party, shall appoint a neutral person to serve as the third arbitrator and shall also appoint an arbitrator for any party failing or refusing to name his arbitrator within the time herein specified. The arbitrators thus constituted shall promptly meet, select a chairperson, fix the time and place of the hearing, and notify the parties. The majority of the panel shall render an award within ten (10) days of the completion of the hearing, and shall promptly transmit an executed copy of the award to the respective parties. Such an award shall be binding and conclusive upon the parties hereto, in the absence of fraud or corruption. Each party shall have the right to have the award made the judgment of a court of competent jurisdiction.

## III.   ARGUMENTS OF THE PARTIES[2]

Plaintiff argues that the motion to compel arbitration should be denied for three reasons. First, plaintiff asserts there is not a valid arbitration agreement because three of the five defendants are not parties to the Agreement which contains the arbitration clause. Plaintiff also argues that the arbitration provision is uncertain and indefinite because it does not identify where the arbitration is to take place, the responsible party for paying for the arbitrators, arbitration costs and legal fees, what procedure, if any, the arbitrators or

---

[2] Although defendants have asserted in their answers that plaintiff cannot avail herself of the protections of Title VII, K.R.S. § 344, or the Equal Pay Act due to her status as an independent contractor, that specific issue is not before the Court. However, for purposes of adjudicating the pending motion to compel arbitration, the Court will assume there was an employer/employee relationship between plaintiff and defendant AFLAC.

3

participants are supposed to follow, or what law applies to the arbitrable issues.  In view of these uncertainties, plaintiff claims the arbitration agreement is unenforceable.

Second, plaintiff argues the terms of the Agreement do not govern all of her specific claims.  Although she concedes that the breach of contract claim against defendant AFLAC falls within the scope of the arbitration clause, plaintiff argues that the Agreement was only intended to govern duties and responsibilities between her and defendant AFLAC, not other parties, and that the Agreement makes no mention of defamatory acts, common law claims, or statutory violations.

Third, plaintiff argues defendants waived their right to arbitrate by failing to follow the terms in the arbitration clause.  According to plaintiff, defendants waived their right to arbitrate by failing to assert their right to arbitrate in a timely fashion.

Defendants argue that the motion to compel arbitration should be granted because there is a valid arbitration agreement and the claims asserted by plaintiff fall within the scope of the Agreement.  First, defendants argue the Agreement is valid and enforceable under Kentucky law.  According to defendants, plaintiff and defendant AFLAC entered into the Agreement voluntarily without fraud, mistake, or duress, and the Agreement had consideration.  Defendants also contend that the Agreement is fair, unbiased, and allows for both parties to vindicate their rights via arbitration.  Defendants also assert that they did not waive their right to arbitrate plaintiff's claims by failing to invoke arbitration until after the lawsuit was filed.

Second, defendants argue that once it has been established that there is a valid arbitration agreement, there is a general presumption of arbitrability and any doubts or ambiguity are to be resolved in favor of arbitration.  Defendants maintain that the arbitration

4

clause is broad so only an expressed provision excluding arbitration should prevent arbitration from being applicable.  Defendants also assert because plaintiff's statutory and tort claims arise out her relationship with AFLAC and the terms of that relationship, the claims are subject to the arbitration agreement.

Lastly, Defendants submit that although defendants AFLAC International and Michael Fatherree are not signatories to the arbitration agreement, due to their business relationship with defendant AFLAC, and the allegations in the amended complaint, they should be bound by the arbitration agreement.

### IV.    ANALYSIS

### A.    Standard of Review

It is well-settled that courts should enforce private agreements to resolve disputes by mandatory binding arbitration and any ambiguities or doubts should be resolved in favor of arbitration.  *Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005) (*citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).  This principle has been codified in the Federal Arbitration Act (FAA) which provides, in part:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, *shall be valid, irrevocable, and enforceable*, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added).  Similarly, under the Kentucky Uniform Arbitration Act, an arbitration agreement  "is valid, enforceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract."  K.R.S. § 417.050.

5

The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270, 280 (1995). Section 2 of the FAA "'is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.'" *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592 (6th Cir. 1995) (*quoting Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983)). "It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S. Ct. 1647 (1991). "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Id.* (citations omitted).

The Supreme Court has recognized that the FAA recognizes a federal public policy favoring arbitration, and that courts must vigorously enforce arbitration clauses. *Shearson/ American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Furthermore, "[i]t is a well-established rule that any doubts regarding arbitrability should be resolved in favor of arbitration." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citation omitted). *See also Hill v. Hillard*, 945 S.W.2d 948, 951 (Ky. App. 1996), *cert. denied*, 522 U.S. 981(1997). Further, courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990). Likewise, any ambiguities in contract or doubts as to the parties' intentions should be resolved in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

6

When considering a motion to compel arbitration and stay proceedings under the FAA, as has been requested by defendants herein, the court has four tasks: (1) it must determine whether the parties agreed to arbitrate; (2) it must determine the scope of that agreement; (3) if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and (4) if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.  *Glazer*, 394 F.3d at 451; *see also Stout*, 228 F.3d at 714.

      1.      **Did the parties agree to arbitrate?**

In determining whether the parties agreed to arbitrate, the court must determine if there was a valid arbitration agreement.  *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 311-12 (6th Cir. 2000), *cert. denied,* 531 U.S. 1072 (2001).  To invalidate an arbitration clause, "the evidence presented [must be] such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).  Arbitration agreements "may be invalidated for the same reasons for which any contract may be invalidated, including forgery, unconscionability, and lack of consideration." *Fazio, supra*, 340 F.3d at 393.  Generally, state law principles that govern the formation of contracts will apply when making this determination.  *Id.* at 394.  In deciding whether the parties agreed to arbitrate a dispute, the court examines the applicable state contract law. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943 (1995).  However, the federal policy favoring arbitration is taken into consideration even in applying ordinary state law.  *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1014 (6th Cir. 2003).

Although plaintiff concedes that the breach of contract claim is within the scope of the arbitration clause, she contends that only defendant AFLAC, as the party who signed the Agreement, is entitled to argue in favor of its enforceability.[3]  More particularly, plaintiff argues that there is not a valid arbitration clause because three of the five defendants are not parties to the Agreement.  While plaintiff correctly points out that defendants AFLAC International, AFLAC, Inc., and Fatherree are non-signatories to the Agreement, their status as non-signatories is not dispositive on the question of whether plaintiff is bound by the arbitration provision of Agreement.  As pointed out by the Defendants in their Reply, the Sixth Circuit has ruled that a party does not have to personally sign an agreement to be bound, but may stand in the shoes of the entity that signed the agreement.  *See Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 625  (6th Cir. 2003)  Non-signatories to arbitration agreements may be bound to an arbitration agreement under ordinary contract and agency principles.  *Id.* at 629; *Arnold*, 920 F.2d at 1281-82.

In this case, four of the five named defendants (AFLAC, Inc, AFLAC, AFLAC International, Inc, and America Family Life Assurance Company of Columbus) are all related entities and stand in the shoes of the party that actually signed the Agreement.[4]  Accordingly, they are bound by the arbitration clause in the Agreement.

With regard to defendant Fatherree, plaintiff states only that he "is a resident of the Commonwealth of Kentucky who does business in Kentucky" who "repeatedly interfered

---

[3] While conceding that claim is within the scope of the arbitration clause, plaintiff contests the validity of the arbitration clause as to all claims.  (*See* Doc. # 17 at n. 4)

[4] Defendants contest the naming of AFLAC, Inc. and AFLAC as separate defendants. (*See* Doc. # 18 at n. 1)

in Plaintiff's contractual relationship with Defendants AFLAC, which resulted in Plaintiff receiving less compensation under those contracts."  (Doc. # 6 at ¶¶ 6, 21).  No other details are provided in the amended complaint.  In defendants' Reply, they indicate that Fatherree is an agent and employee of Defendant America Family Life Assurance Company of Columbus.

In determining that Fatherree is entitled to invoke the benefits of the arbitration agreement, the Court is guided by the Sixth Circuit's decision in *Arnold*.  In *Arnold,* a stock purchaser sued a corporation and its officers alleging securities violations.  The *Arnold* officers sought to enforce the arbitration clause in the stock purchase agreement, but the stock purchaser argued that the arbitration clause could not be enforced by the individual officers because they were not parties to the contract, the same argument made by plaintiff herein.  The Sixth Circuit, following the majority view of other circuit courts of appeals, disagreed.  Because the individual defendants' allegedly wrongful acts related to their actions as agents of the company that was a party to the arbitration agreement, the Court concluded that the nonsignatory agents should have the benefits of the arbitration agreements made by their principal.  920 F.2d at 1281-82.  If such agents were not extended the benefit of the arbitration clause, then it would be all too easy for a clever litigant to defeat an arbitration agreement by naming nonsignatories as defendants and/or by naming nonsignatories in their individual capacities only.  *Id.*

In this case, defendant Fatherree is being sued because of actions he took or did not take in his capacity as an employee or agent of AFLAC.  Moreover, several of plaintiff's claims against Fatherree originate from Fatherree's alleged wrongful conduct as an agent or employee of AFLAC, including: tortuous interference with a business relationship (Count

9

XII), conspiracy to retaliate under K.R.S. § 344 (Count XIII), and tortuous interference with a contract relationship (Count XIV).

Where a party alleges that a nonsignatory engaged in a conspiracy with a signatory, the nonsignatory may compel arbitration. *See American Reliable Ins. Co. v. Arrington,* 269 F.Supp. 2d 758, 762 (S.D. Miss. 2003) (nonsignatory may compel arbitration where plaintiff alleges conspiracy with signatory), *citing Grigson v. Creative Artists Agency, LLC,* 210 F.3d 524, 526 (5th Cir. 2000); *see also Roberson v. Money Tree of Ala., Inc.*, 954 F.Supp. 1519, 1529 n.11 (M.D. Ala. 1997) (allegation of a civil conspiracy between signatory and nonsignatory allows nonsignatory to compel arbitration under laws of agency).  Although these cases are not controlling, the Court finds their holdings persuasive and more importantly, consistent with *Arnold*.  As an agent of AFLAC, Fatherree is entitled to invoke the benefits of the arbitration agreement executed by its principal, AFLAC.  *Arnold*, 920 F.2d at 1282.

The final issue related to the threshold question of whether the parties agreed to arbitrate is whether AFLAC waived its right to arbitration.  Plaintiff argues that defendants waived their right to arbitration by failing to follow the specified time lines in the arbitration clause.  An agreement to arbitrate may be "waived by the actions of a party which are completely inconsistent with any reliance thereon." *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat,* 289 F.3d 434, 438 (6th Cir. 2002) (quoting *Germany v. River Terminal Ry. Co.,* 477 F.2d 546, 547 (6th Cir. 1973) (per curiam)).  Because there is a strong presumption in favor of arbitration under the FAA, waiver of the right to arbitration is not to be lightly inferred.  *O.J. Distributing Inc. v. Hornell Brewing Co.,* 340 F.3d 345, 355 (6th Cir. 2003).

In considering plaintiff's waiver argument, the Court has the benefit of three recent Sixth Circuit cases which have discussed the issue of waiver of a right to arbitrate.  In *General Star,* the court found the defendant did not assert any right to arbitrate until seventeen months after receiving actual notice of the lawsuit, when it objected to the district court's entry of default judgment against it.  The court held since the defendant "remained idle while [the plaintiff] incurred the costs associated with this action," it had waived any right to arbitrate. 289 F.3d at 438.  In *O.J. Distributing,* the court noted, "while there is a strong presumption in favor of enforcing arbitration rights, both this Court and our sister circuits have been willing to find under appropriate circumstances that a party has waived its right to arbitrate by virtue of its actions in delaying the right to the point of prejudicing the other party." 340 F.3d at 357 (citing *Gen. Star,* 289 F.3d at 438).  The *O.J. Distributing* court found the defendant waived its right to arbitrate by engaging with the plaintiff in thirteen months of pre-litigation negotiations and two months of negotiations after litigation was filed, during all of which the defendant denied "the existence of the Agreement and, therefore, the arbitration provision." *Id.*  In so concluding, the court stated:

> Defendant slept on its [arbitration] rights for approximately fifteen months ... while Plaintiff incurred costs associated with the matter and was prejudiced as a result.

*O.J. Distributing*, 340 F.3d at 358.

In *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573-74 (6th Cir. 2003), by contrast, the Sixth Circuit overturned a district court's finding of waiver of the right to arbitrate where the defendant in its pre-litigation dispute resolution discussions declined "at [that] point" to agree to arbitration, but then immediately invoked the arbitration clause upon the commencement of litigation by filing a motion to

11

compel arbitration and stay the proceedings.

In this case, there is no evidence that the defendants purposefully and unjustifiably manipulated the arbitral process to gain an unfair advantage over plaintiff. To the contrary, defendants filed their motion to compel arbitration less than one month after the filing of plaintiff's amended complaint. The Court finds the facts herein are much more similar to those in *Highlands Wellmont Health Network* than those in *General Star* or *O.J. Distributing.* Defendants' failure to invoke arbitration until after commencement of the lawsuit has not prejudiced plaintiff to the extent necessary to compel the court to conclude that defendants have waived their right to arbitrate.

### 2.   Is the arbitration agreement valid and enforceable?

Plaintiff argues that the arbitration agreement should be invalidated due to a lack of consideration. The Court disagrees. Agreements to arbitrate as condition of employment constitute consideration and are enforceable under the FAA. *Circuit City Stores Inc. v. Adams*, 532 U.S. 105, 109 (2001). Moreover, even if the arbitration agreement was not a condition of employment, an arbitration clause requiring both parties to submit equally to arbitration constitutes adequate consideration. *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 380 (6th Cir. 2005). In this case, the arbitration paragraph of the Agreement was initialed by plaintiff, was neither concealed nor disguised, and its provisions were clearly stated such that the parties would likely to be able to understand it. At a minimum, such a reader would understand the plain language of paragraph fifteen which provided that "[a]ny dispute arising under this Agreement to the maximum extent allowed by applicable law, shall be subject to arbitration, and prior to commencing any court action the parties agree that they shall arbitrate all controversies."

12

Plaintiff also argues the arbitration clause of the Agreement is uncertain and indefinite because it does not identify where the arbitration is to take place, the responsible party for paying for the arbitrators, arbitration costs and legal fees, what procedure, if any, the arbitrators or participants are supposed to follow, or what law applies to the arbitrable issues.

In *Green Tree Financial Corp. v. Randolph,* 531 U.S. 79, 92 (2000), the Supreme Court held that the silence of an arbitration agreement regarding costs and fees does not alone render the agreement unenforceable.  In *Green Tree,* the buyer of a mobile home sought to avoid the arbitration clause contained in the installment contract, arguing that she could not effectively vindicate her claims under the Truth in Lending Act because the arbitration agreement did not address how the costs of the arbitration proceeding would be allocated. The Supreme Court rejected this argument, reasoning:

> It may well be that the existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum. But the record does not show that Randolph will bear such costs if she goes to arbitration. Indeed, it contains hardly any information on the matter. As the Court of Appeals recognized, "we lack ... information about how claimants would fare under Green Tree's arbitration clause." The record reveals only the arbitration agreement's silence on the subject, and that fact alone is plainly insufficient to render it unenforceable. The "risk" that Randolph will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.

*Id.* at 91-92 (footnote omitted), *see also Blinco v. Green Tree Servicing, LLC*, 400 F.3d 1308 (11th Cir. 2005) (holding that arbitration provision was not rendered unenforceable due to its failure to specify identity of arbitrator, forum, location, or allocation of costs)

In this case, although all of the specific procedures governing the arbitration are not spelled out in the Agreement itself, the Agreement does provide that the arbitration "shall

13

be pursuant to the terms of the Federal Arbitration Act."  In view of the Supreme Court's decision in *Green Tree Financial*, the failure to provide further specificity within the Agreement itself and the Agreement's silence as to certain arbitration terms and/or procedures does not invalidate the arbitration agreement.

### 3. <u>What is the scope of the arbitration agreement</u>?

Under the FAA, "a court may only compel a party to arbitrate where that party has entered into a written agreement to arbitrate that covers the dispute."  *See* 9 U.S.C. § 2. Having determined that the parties intended to arbitrate under a valid arbitration agreement, and concluded that all defendants are entitled to benefit from that agreement, the next step is to determine if the claims brought by plaintiff are within the scope of the arbitration agreement.  The Court addresses the question of arbitrability with a healthy regard for the well-settled federal policy favoring arbitration.

In her amended complaint, plaintiff alleges that AFLAC, its alleged affiliated corporations, and defendant Fatherree, retaliated and discriminated against her during her employment with AFLAC in violation of federal and state law.  (Doc. # 6)  Although several of the claims sound in tort, it is without dispute that the actions giving rise to these claims all arose during and in relation to plaintiff's employment with AFLAC.

Plaintiff's asserted common law claims include promissory estoppel, breach of contract, conversion, fraud and misrepresentation, breach of covenant of good faith and fair dealing, defamation, tortuous interference with a business relationship, and tortuous interference with a contract relationship.  (Doc. # 6).  Within her memorandum in opposition to the motion to compel arbitration, plaintiff relies upon case law outside the Sixth Circuit which have held that common law torts are outside the scope of arbitration provisions.  See

14

*Ford v. Nylcare Health Plans*, 141 F.3d 243 (5th Cir. 1998); *Telecom Italia, SPA v. Wholesale Telecom Corp.*, 248 F.3d 1109 (11th Cir. 2001); *Leadertex v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20 (2d Cir. 1995).   However, each of these cases involved business-to-business contracts, rather than the employment contract involved herein.

The test to determine if a claim falls within the scope of an arbitration clause is to determine if the factual allegations "touch matters" governed by the parties' Agreement, not what claims the Agreement specifically mentions as plaintiff contends.  *Mitsubishi Motors Corp.*, 473 U.S. at 625.  The Second Circuit interpreted this rule as meaning whether the factual allegations somehow "pertain to" the contractual relation.  *Coudert v. Paine Webber Jackson & Curtis*, 705 F.2d 78, 82 (2d Cir. 1983).

In this Agreement, there is a thorough outline of the duties and responsibilities of each party in their employment capacity.  With the exception of plaintiff's defamation claim, all of plaintiff's common law claims (promissory estoppel, breach of contract, conversion, fraud and misrepresentation, breach of covenant of good faith and fair dealing, tortuous interference with a business relationship, and tortuous interference with a contract relationship) relate to the defendants not paying plaintiff for services preformed in the plaintiff's employment capacity.   Since the Agreement defines or "pertains to" the employment capacity of the plaintiff, these common law claims fall within the scope of the arbitration clause.

The Agreement states that arbitration is appropriate in "any dispute arising under this Agreement to the maximum extent allowed by applicable law."  That would include plaintiff's claim for defamation in violation of state law.  *See McGinnis v. E.F. Hutton & Co.*, 812 F.2d 1011, 1013 (6th Cir. 1987) (holding that a clause limiting arbitration to employment termination extends to a defamatory comment made after such termination about employee's service)  In this case, the alleged defamatory statements were also made in relation to the plaintiff's service of an employment capacity, but the governing arbitration clause is much broader.  The defamatory statements "touch matters" governed by the Agreement because the statements were about plaintiff's service to defendants which is the subject matter of the Agreement.  *Mitsubishi Motors Corp.*, 473 U.S. at 624.  Thus, the defamation claim also falls within the scope of the arbitration clause.

Plaintiff's statutory claims under K.R.S. § 344 also fall within the scope of arbitration.  Under a similar arbitration clause stating "any controversy or claim arising out of this Agreement..." it was found that based on this broad language, unless there is clear intent to exclude a particular claim, exclusion must be rejected.  *See Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co*., 706 F.2d 155, 160 (6th Cir. 1983).  The arbitration clause herein states "any dispute arising under this Agreement" and does not specifically mention exclusion of any claims for arbitration.  Because the factually allegations supporting plaintiff's state statutory claims under K.R.S. § 344 all relate to actions taken relating to or touching matters of plaintiff's employment, and the Agreement governs plaintiff's employment with AFLAC, her state statutory claims under K.R.S. § 344 fall within the scope of arbitration.  Hence, all statutory and common law claims fall within the scope of arbitration.

16

Under the third part of the *Stout* test, the Court must determine if Congress intended plaintiff's federal statutory claims to be nonarbitrable. In the same vain, the Court also considers whether plaintiff's state statutory claims were intended to be nonarbitable. The FAA applies to all employment contracts which parties have agreed to arbitrate except those of "seamen, railroad workers, and [other classes] of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 600-601 (6th Cir. 1995). There is no suggestion in plaintiff's amended complaint that her position was related to the actual transport of goods in interstate commerce. Likewise, her claims are not disqualified from arbitration because they raise claims under various federal statutes. "A district court's duty to enforce an arbitration agreement under the FAA is not diminished when a party bound by the agreement raises claims arising from statutory rights." *Stout*, 228 F.3d at 715. Absent clear congressional intent to exempt the enforcement of statutory rights from the FAA, claims arising under specific statutes are subject to arbitration. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

Plaintiff's asserted statutory claims include Retaliation under Title VII and K.R.S. § 344, Gender/Pregnancy Discrimination under Title VII and K.R.S. § 344, Equal Pay Act, and Conspiracy to Retaliate pursuant to K.R.S. § 344. It is well established within the Sixth Circuit that Congress did not intend to exclude Title VII claims from arbitration. *See Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 309-10 (6th Cir. 1991) (ordering arbitration of sexual harassment and discrimination claims under Title VII and K.R.S. § 344, along with employment-related common law tort claims); *Cooper v. MRM Inv. Co.*, 367 F.3d 493 (6th Cir. 2004). In fact, the 1991 Amendments to Title VII "evince a clear congressional intent

17

to make arbitration an alternative method of dispute resolution." *Id.* at 508 (*citing Rajjak v. McFrank & Williams*, 2001 WL 799766 (S.D.N.Y. 2001)).   Therefore, Congress intended Title VII claims to be arbitrable.

The Sixth Circuit has yet to rule specifically that claims arising under the Equal Pay Act should not be subject to arbitration. However, the Seventh Circuit has determined that there was no congressional intent to exempt Equal Pay Act claims from arbitration. *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 365 (7th Cir. 1999), *cert. denied*, 528 U.S. 811 (1999) (Equal Pay Act claims are arbitrable)  The Court finds *Koveleskie* persuasive.  There is no indication that Congress intended claims under the Equal Pay Act to be exempt from arbitration under the FAA.  Therefore, plaintiff's claims arising under the Equal Pay Act are subject to arbitration.

Similarly, Kentucky courts have also compelled employees to arbitrate statutory civil rights claims. *See Hill v. Hilliard Lyons*, 945 S.W.2d 948, 951 (Ky. App. 1997) (dismissing claims of sexual harassment and retaliation arising under K.R.S. 344 and compelling employee to submit claims to binding arbitration), *cert. denied*, 522 U.S. 981 (1997); *see also Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305 (6th Cir. 1991) (compelling arbitration of sexual harassment and discrimination claims under K.R.S. § 344).  Kentucky courts have also required common law tort claims to be arbitable. *Hill*, *supra*.  Although the *Hill* court did reverse the state circuit court's order compelling arbitration of certain common law torts (sexual assault and battery and false imprisonment), the conduct giving rise to those torts was independent of the employment relationship.  In this case, each of the common law torts brought by plaintiff arose out of her employment with AFLAC.  Thus, there is no evidence that plaintiff's common law torts were intended to be nonarbitable.

18

Under the fourth part of the *Stout* test, once it has been determined that arbitration is compelled on all claims pursuant to the terms of the employment agreement, dismissal is appropriate.  *See BBS Techs., Inc. v. Remington Arms Co.*, 2005 WL 3132307 (E.D. Ky. 2005); *Raasch v. NCR Corp.*, 254 F.Supp.2d 847, 851 (S.D. Ohio 2003).   However, because the dismissal is not on the merits of the claims raised, it is without prejudice.  This is because, having compelled arbitration on all issues in this case, the Court must dismiss for lack of jurisdiction under Fed. R. Civ. Pro. 12(b)(1).  *See Bauer v. RBX Industries, Inc.*, 368 F.3d 569, 581 (6th Cir. 2004).  Accordingly, the parties shall proceed to arbitration pursuant with the terms of the Agreement.

## V.      CONCLUSION

For the reasons stated herein, it is **ORDERED** as follows

(1)     The parties are **DIRECTED** to proceed to arbitration under the terms of the Arbitration Agreement;

(2)     Defendants' Motion to Compel Arbitration and Stay Judicial Proceedings (Doc. # 14) be, and is hereby **GRANTED** to the extent arbitration is ordered, and **DENIED** to the extent a stay is requested;

(3)     This action shall be **DISMISSED**, without prejudice, and stricken from the Court's docket.

This 19th day of September, 2006.



Signed By:

*David L. Bunning*

**United States District Judge**

G:\DATA\Opinions\05-190-MOO Granting Motion to Compel Arbitration.wpd